# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | ) |
| | ) **Chapter 13** |
| **DAVID JOHN BALLSTAEDT, III,** | ) |
| | ) **Bankruptcy No. 12-01990** |
| Debtor. | ) |
| | ) |
| **DAVID JOHN BALLSTAEDT, III,** | ) |
| | ) |
| Plaintiff, | ) **Adversary No. 13-9001** |
| | ) |
| v. | ) |
| | ) |
| **DAWN R. CURTIS and** | ) |
| **JAMES PETERS** | ) |
| | ) |
| Defendant. | ) |

## ORDER ON MOTION TO DISMISS ADVERSARY AND MOTION FOR DEFAULT JUDGMENT

These matters came before the Court on Debtor David John Ballstaedt's Motion for Default Judgment and Defendants Dawn R. Curtis and James Peters' Motion to Dismiss. The Court held a hearing on the matters on June 24, 2013. Attorney and Defendant James Peters appeared on behalf of himself and Defendant Dawn R. Curtis. David John Ballstaedt appeared pro se. After hearing the arguments, the Court took the matters under advisement. The parties submitted post-hearing briefs. This is a core proceeding under 18 U.S.C. § 157(b)(2)(G).

## STATEMENT OF THE CASE

Debtor filed this adversary action against Dawn R. Curtis ("Curtis"), Creditor in Debtor's Bankruptcy and Debtor's former spouse, and James Peters, Curtis' attorney (collectively "Defendants"). Debtor alleges that Defendants violated Debtor's automatic stay by allowing the Linn County District Court to issue an injunction that prohibits Debtor from contacting Curtis. Defendants argue that the injunction does not fall under the protection of the automatic stay. Even if it did, they argue that they had no affirmative duty to prevent the Iowa District Court from issuing the ruling after Debtor filed for bankruptcy. Defendants also note they have not made any attempts to enforce the order and the order has nothing to do with Debtor's property, liabilities, or any other matters relevant to bankruptcy.

## PROCEDURAL AND FACTUAL HISTORY

Curtis and Debtor's marriage was dissolved on November 8, 2010. Curtis filed for an injunction against Debtor in Linn County District Court in 2012. The Iowa District Court held a hearing on August 22, 2012. On October 22, 2012, two months later, Debtor filed a voluntary Chapter 13 petition. Debtor listed Curtis in his bankruptcy Petition as a party in six state court cases, as a party having received transfers of property from Debtor, as Debtor's ex-spouse, and as a creditor of Debtor. On November 4, 2012, the Iowa District Court issued the

2

injunction. It prohibited Debtor from having purposeful contact or communication or coming within 200 feet of Curtis' home or place of employment until November 4, 2017.

The Iowa District Court made the following findings of fact in support of its order:

> Dawn and David were married from 2005–2010. The Iowa Court of Appeals affirmed the Dissolution Decree in 2011. There were no children born during the marriage. Dawn has two children from her first marriage. David never adopted the children. David acknowledges he has no legal right to visit or communicate with Dawn's children. The parties do not share any debt. They don't own jointly any property. Dawn and David do not have any joint business interests.
>
> The parties met in 2004. They moved in together in April 2005 and married in March 2006. The evidence establishes this has been a tumultuous relationship. Dawn obtained a domestic abuse protective order in 2010 that remained in place during the pendency of the divorce. At one point in time David faced contempt for violating the court order prohibiting him from contacting Dawn. David ran Dawn, and her children, off the road while each was driving on a public street.
>
> Dawn believes that David is responsible for threats against her safety in April 2011 on Craig's List. David was not charged with any criminal act for those Craig's List postings. In July 2011 David filed a civil lawsuit against Dawn seeking damages for his time in jail on charges or allegations of contempt that were later dismissed when the allegations were not established beyond a reasonable doubt in court.
>
> Dawn filed for bankruptcy relief in 2011. David filed documents in Dawn's bankruptcy alleging she acted fraudulently and that she had hidden assets ($15,000 worth of jewelry). Dawn had to defend against the allegations. The bankruptcy was delayed as a result of David's allegations of fraud.

3

David filed a lawsuit against Dawn in early 2012. He again sought damages he claimed resulted from the harassment charge filed in April 2011 that was dismissed after David was found to be not guilty by a jury in September 2011. Dawn receives hundreds of text messages from David. The messages don't contain threats. The number and content of some of the messages causes Dawn to feel as if David is watching her. Most frequently David asks to see Dawn's children. In the few instances Dawn has responded to David to ask that he leave her alone, the frequency of the text messages escalates. Dawn is unable to keep her phone number private. She has changed her phone number at least ten times. She works for US Cellular and her phone number is on her business cards. She needs to be available to her clients and this makes her phone number available to David as well.

Despite his acknowledgment that he has no legal right to contact Dawn's children, David persists in his contact with Dawn purportedly to pass information to her children. He acknowledges he has sent numerous text messages, and frequently tells Dawn that he will stop sending text messages as soon as she allows him to have contact with her children.

In February 2012 David and Dawn went to the same restaurant, Capone's, located in Cedar Rapids. Dawn danced with a friend, and then discovered that David was in the same restaurant. She and her friend left. David followed her out. He yelled her name a number of times from across the street. He told her to tell the girls that he loves them, he told her to enjoy her evening and that he was leaving. The encounter made Dawn nervous.

In April 2012 Dawn and a co-worker stopped at a Road Ranger convenience store. Dawn rode in her manager's vehicle. She saw David's truck drive slowly past. She then began receiving text messages from David.

On St. Patrick's Day 2012 Dawn left her house to go to a bar. She heard David's Ford Mustang. She began to run. David pulled up, stopped his vehicle and began running after her. He insisted on talking with Dawn about "stuff." These encounters diminish Dawn's

4

sense of security and personal safety. It causes her stress each time David contacts her.

<u>Curtis v. Ballstaedt</u>, Linn Co. No. CVCV073970, Findings of Fact, Conclusions of Law, and Ruling at *1–2 (Iowa Dist. Ct. Nov. 4, 2012).

Peters sent a copy of the District Court's order to Debtor. Debtor responded by letter to Peters, requesting that Peters inform Debtor if he planned to seek relief from the automatic stay regarding the injunction order. Debtor stated that he had filed for bankruptcy and he believed the injunction order was void because it violated the automatic stay. Peters responded that he did not believe the injunction order was covered by the automatic stay. Debtor responded again restating his belief that the injunction order was void.

On November 9, 2012 Debtor filed a Motion for New Trial and Motion to Vacate the Ruling in Linn County District Court. That court denied Debtor's motions. Debtor then filed a Motion to Enlarge Findings in the same court. The court denied the motion.

Debtor filed this adversary action in bankruptcy court on January 3, 2013 seeking actual and punitive damages against Defendants for violation of the automatic stay under 11 U.S.C. § 362(k). Debtor filed a Motion for Default Judgment. It alleged that he served Defendants on March 19, 2013 and that Defendants did not file an answer within thirty days. Defendants assert that they were not served and thus not aware of the adversary action until they saw the

5

Court's Order Setting Show Cause Hearing, at which time they immediately filed a resistance on May 20, 2013. Defendants also argue that the issue is moot since Defendants now have a response on file.

Defendants also filed a Motion to Dismiss this case. They argue that the District Court's injunction order is not barred by the automatic stay as a matter of law, because it is a civil restraining order, not a money judgment. Additionally, Defendants argue that even if it was covered under the automatic stay, they had no obligation to take affirmative action to prevent the District Court from issuing the order. They also note that they have not made any attempt to enforce the injunction order post-petition. Debtor maintains that the injunction order violates the automatic stay.

## DISCUSSION

### I. Debtor's Motion for Default Judgment

The Eighth Circuit explains that "[d]efault judgments . . . are not favored by the law." U.S. v. Harre, 983 F.2d 128, 130 (8th Cir. 1993). Instead, general policy notions support a decision on the merits when possible. Seaver v. Burwell Family Ltd. P'ship (In re Burwell), 391 B.R. 831, 834 (B.A.P. 8th Cir. 2008). "A party is not entitled to a default judgment as of right; rather, the decision calls for the courts exercise of sound judicial discretion." Lovell v. McArthur (In re McArthur), 258 B.R. 741, 746 (Bankr. W.D. Ark. 2001); see also Ackra Direct Mktg Corp. v.

6

Fingerhut Corp., 86 F.3d 852, 856 (8th Cir. 1996) ("Our review is simply whether the district court abused its discretion in entering default judgment . . .").

"Proper service of a summons and complaint on a defendant is a prerequisite for a [d]efendant to answer. If a [d]efendant is not properly served, their obligation to answer is not triggered." Norsyn, Inc. v. Desai, 351 F.3d 825, 830 (8th Cir. 2003). The Court finds Defendants have not been properly served, and thus, the Court need not enter default. Moreover, to the extent that this finding is incorrect, the Court additionally finds the Defendants' Answer and Motion to Dismiss have cured any possible default and have indicated their intent to defend.

**II.   Defendants' Motion to Dismiss**

"The Bankruptcy Rules follow the Federal Rules of Civil Procedure standards for dismissal and requirements for pleading." In re Walter, 462 B.R. 698, 703 (Bankr. N.D. Iowa 2011). Bankruptcy Rule 7012 states: "Rule 12(b)–(i) F.R. Civ. P. applies in adversary proceedings." Defendants do not explicitly state a ground for dismissal, but argued that the state court order does not qualify as a violation of the automatic stay. The Court thus treats this as a motion for dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Id.

"In order to determine whether a complaint states a 'claim upon which relief can be granted,' courts look to what a party is required to plead." In re Walter, 462

7

B.R. 698, 703 (Bankr. N.D. Iowa 2011). Bankruptcy Rule 7008(a) states: "Rule 8 F.R. Civ. P. applies in adversary proceedings." Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court has stated: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

> The Supreme Court now applies a two-pronged approach in evaluating a motion to dismiss. First, the Court identifies "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Second, to the extent that the complaint contains factual allegations, the Court assumes the truth of those facts and determines whether they plausibly give rise to an entitlement to relief.

Walter, 462 B.R. at 703(internal citations omitted). Therefore in order to evaluate Defendant's Motion to Dismiss, the Court must assess whether Debtor's factual assertions, when accepted as true, entitle Debtor to relief.

Debtor alleges that Defendants violated the automatic stay by allowing the Iowa District Court to enter the injunction order after Debtor filed for bankruptcy. There is no dispute that the Iowa District Court entered an injunction order after the automatic stay was in place. Therefore, the question becomes whether the entry of a state court injunctive order prohibiting Debtor from contacting or coming near Curtis is a violation of the automatic stay.

8

Debtor has thoughtfully researched the case law and properly presented a part of it to the court. Debtor is correct that: "The filing of a petition for relief under title 11 automatically stays a variety of acts to collect or otherwise enforce a pre-petition debt." In re Marino, 437 B.R. 676, 678 (B.A.P. 8th Cir. 2010) (citing 11 U.S.C. § 362(a)). "The automatic stay stops all collection efforts and all harassment to give the debtor a breathing spell from the financial pressures that led to the bankruptcy filing." In re Ehlinger, B.R. 12-01680, 2013 WL 1147216 at *2 (Bankr. N.D. Iowa Mar. 19, 2013) (citing In re Lynch, 415 B.R. 712, 714 (Bankr. N.D. Iowa 2009)). "By the passage of § 362, Congress intended the automatic stay to stop 'all collection efforts, all harassment, and all foreclosure actions' and 'prevent creditors from attempting in any way to collect a prepetition debt.'" In re Goodfellow, 298 B.R. 358, 361 (Bankr. N.D. Iowa 2003) (quoting H.R. 595, 95th Cong., 1st Sess. pp. 340–42 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5963, 6296–6299; In re Grau, 172 B.R. 686, 690 (Bankr. S.D. Fla. 1994)).

"If a creditor violates the automatic stay, the debtor is entitled to recover damages, costs and attorney fees." In re Ehlinger, 2013 WL 1147216 , at *2 (citing 11 U.S.C. § 362(k)). The debtor may also recover punitive damages under certain circumstances. 11 U.S.C. § 362(k) (2012). "To prevail under § 362(k), the debtor must show: (1) the creditor violated the automatic stay; (2) the violation was willful; and (3) the debtor was injured by the violation." In re Marino, 437 B.R. at

678 (citing Lovett v. Honeywell, Inc., 930 F.2d 625, 628 (8th Cir. 1991)). "A violation is willful 'when the creditor acts deliberately with knowledge of the bankruptcy petition.'" Id. (citing Knaus v. Concordia Lumber Co. (In re Knaus), 889 F.2d 773, 775 (8th Cir.1989)).

However, "the automatic stay protection does not apply in all cases; there are statutory exemptions [in 11 U.S.C. § 362(b)], and there are non-statutory exceptions." Dominic's Rest. of Dayton, Inc. v. Mantia, 683 F.3d 757, 760 (6th Cir. 2012). In that case, the Sixth Circuit Court of Appeals considered whether a civil contempt order entered by another court after the debtor filed for bankruptcy violated the automatic stay. Id. at 760–61. The Sixth Circuit held:

> The **automatic stay** provision was intended to prevent interference with a bankruptcy court's orderly disposition of the property of the estate, it **was not intended to preclude post-petition suits to enjoin unlawful conduct**. If this section were read to prevent the injunctive relief [against mark infringement] sought here, bankrupt businesses which operated post-petition could violate [plaintiffs'] rights with impunity.

Id. (internal quotations and citations omitted) (emphasis added). The court ruled that the order did not violate the automatic stay. Id. at 761. While Dominic's was a trademark case, its rationale applies equally to this case. Other cases with issues similar to those before this court have reached the same conclusion.

Our own Eighth Circuit Bankruptcy Appellate Panel (B.A.P.) recently considered whether a defendant who sought and obtained a protection order under

10

Minnesota law in a Minnesota state court after debtor filed for bankruptcy violated the automatic stay. In re Marino, 437 B.R. at 676. In Marino, the debtor rented a room in her landlord's home. Id. at 677. After filing for bankruptcy, the debtor informed her landlord that she had filed for bankruptcy. Id. at 678. The landlord threatened the debtor and the debtor called the police. Id. The Minnesota state court issued an *ex parte* order for protection under the Minnesota statute. Id. The statute allowed a person to file for such an order against a family member or other tenant of the person's home. Id. at 679. The law was designed to protect against domestic abuse. Id. The B.A.P. concluded that the Minnesota state court order fell under the domestic violence exception to the automatic stay found in § 362(b)(2)(A)(v). Id. at 679.

Another court considered a similar order issued under the Kansas Protection from Abuse Act. In re Nelson, 335 B.R. 740, 750–52 (Bankr. D. Kan. 2004). The court in Nelson concluded that the state court order entered after the debtor filed for bankruptcy did not fall under or violate the automatic stay. Id. at 751. The court determined that the proceeding was technically civil, but had "quasi-criminal" characteristics. Id. at 750–51. The court further noted that "[n]othing in [the state court order] sought to or did in fact dispossess [debtor] of any property." Id. at 751. Instead, the [order] is purely a restraining order or injunction, prohibiting [debtor] from . . . contacting or communicating with [the defendant]."

11

<u>Id.</u>  The court concluded that the proceeding "more closely resembles a criminal proceeding or a proceeding to enforce a government's police power to provide for the safety of its citizens."  <u>Id.</u>  Thus, the court concluded that the Kansas state court order fell under the exception to stay in 11 U.S.C. § 362(b)(1) for criminal proceedings and § 362(b)(4) for police and regulatory power.  The court elaborated:

> The criminal, police power, and domestic relations exceptions in § 362(b) express a strongly-held Congressional view that pending bankruptcies should not forestall fundamental nonbankruptcy law proceedings dedicated to the preservation of the safety and security of the family. Conducting the [Protection from Abuse] trial did not violate the stay. To hold otherwise would permit a potential abuser to hide behind the stay while flouting orders restraining him or her from abusing, battering, injuring, assaulting or threatening a victim during the pendency of the abuser's bankruptcy. That such a result was intended by Congress is incomprehensible to this Court.

<u>Id.</u>

The injunction order in question is quasi-criminal in nature.  The Iowa District Court for Linn County recited its findings of fact in great detail.  That court made abundantly clear that the reason for the injunction order it entered was to prevent Debtor from putting his ex-spouse in fear of injury or assault.  These are the exact same purposes as are involved in the Minnesota and Kansas domestic violence cases described above.  Although it arises from a proceeding for a civil injunction under Iowa Rule of Civil Procedure 1.1502(1), functionally, it is the equivalent of a restraining order designed to prevent domestic violence.  The

violation of such a restraining order is punishable by criminal contempt under Iowa Code § 664A.7.

In the injunction order in this case, the Iowa District Court relied on <u>Opat v. Ludeking</u>, 66 N.W.2d 597 (Iowa 2003).  In <u>Opat</u>, the Supreme Court of Iowa affirmed a nearly-identical injunction that was also issued under Iowa Rule of Civil Procedure 1.1502(1).  There, the injunction prohibited a woman from coming near a high school friend, who perceived her actions as threatening based on their previous encounters.  Similarly to Curtis' injunction order, the injunction in <u>Opat</u> was the functional equivalent of a domestic injunction order, except applied to a non-domestic situation.  While both the injunction in <u>Opat</u> and the injunction in this case both reflect the same principles as a domestic abuse injunction or restraining order, the one in this case is much more closely related to—if not the actual equivalent of—an Iowa domestic abuse order.  In fact, it appears this injunction could have been entered under the authority of Iowa Code Chapter 236—the Domestic Abuse Act.  The Iowa Domestic Abuse Act specifically applies to: "separated spouses or persons divorced from each other and not residing together at the time of the assault." Iowa Code § 236.2(2)(b).  Notably, "[a]n actual assault or verbal physical threat is not necessary before behavior reasonably seen to be dangerous may be enjoined." <u>Matlock v. Weets</u>, 531 N.W.2d 118, 123 (Iowa 1995).

Given all of the factors involved in this case, the Court finds the Iowa District Court order here was a domestic violence injunction which is specifically exempted from the automatic stay under 11 U.S.C. § 362(b)(2)(A)(v). Thus, like the Eighth Circuit B.A.P., the Court concludes there is no violation of the stay in this case. Marino, 437 B.R. at 677–79. Even if the Court is incorrect in finding this to be a domestic violence injunction, the Court alternatively adopts the analysis of In re Nelson, 335 B.R. at 750–52, concluding the injunction was an exception to the automatic stay under §§ 362(b) (1) regarding criminal actions or (b)(4) regarding the government's police and regulatory power.

The Court also notes this conclusion is consistent with the purpose of the automatic stay. Thus the relief requested by Debtor for a stay violation fails as a matter of law. The Motion to Dismiss will be granted.

For the sake of argument, even if the injunction order was in violation of the automatic stay, the injunction would still be valid. Debtor is accurate that actions taken in violation of the automatic stay are void. LaBarge v. Vierkant (In re Vierkant), 240 B.R. 317, 320 (8th Cir. BAP 1999). However, "[a] bankruptcy court has the authority to make exceptions to and to annul the automatic stay under 11 U.S.C. § 362(d)." In re Myers, 491 F.3d 120, 127 (3d Cir. 2007). Actions in violation of the stay, although void, "may be revitalized in appropriate circumstances by retroactive annulment of the stay." Id.; see also Soares v.

Brockton Credit Union (In re Soares), 107 F.3d 969, 976–77 (1st Cir. 1997); In re Sewell, 345 B.R. 174, 180 (B.A.P. 9th Cir. 2006).  Therefore, even if the injunction order was in violation of the stay, the Court would retroactively lift the stay to revitalize the injunction order.

**WHEREFORE**, Motion for Default Judgment is **DENIED**.  Motion to Dismiss is **GRANTED**.  The above-captioned adversary is **DISMISSED**.

Dated and Entered: October 21, 2013

_____
**THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE**